UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:02-cr-387-T-23EAJ
                                                               8:06-cv-764-T-23EAJ
ANGEL OLAYA-CARVAJAL,
_____/

### REPORT AND RECOMMENDATION

The Honorable Steven D. Merryday referred (Doc. 11) Olaya-Carvajal's "Motion Under 28 U.S.C. § 2255 to Vacate Sentence" (Doc. 1) for this court to conduct an evidentiary hearing and to file a report and recommendation on Olaya-Carvajal's claim that trial counsel rendered ineffective assistance by not filing a notice of appeal. The Federal Public Defender was appointed (Doc. 12) to represent Olaya-Carvajal.

The indictment charged Olaya-Carvajal with conspiring to possess with the intent to distribute cocaine while on board a vessel. Olaya-Carvajal pleaded guilty without a plea agreement. Olaya-Carvajal faced a statutory mandatory minimum sentence of ten years and a statutory maximum of life imprisonment. He was sentenced to 168 months, the low end of the guidelines range. Contrary to Olaya-Carvajal's understanding, trial counsel filed no appeal.

#### Finding of Facts

At the evidentiary hearing two witnesses testified: Olaya-Carvajal and Todd Seiden (Olaya-Carvajal's trial counsel). Having considered the testimony of the witnesses and

reviewed the transcript of the evidentiary hearing (Doc. 16) ("Transcript"), the court finds the following facts are supported by a preponderance of the credible evidence:

1. Olaya-Carvajal speaks no English, only Spanish. Transcript at 8. Seiden speaks no Spanish, but to converse with clients he employs staff who are English-Spanish bilingual and uses court interpreters. Transcript at 23-24. Olaya-Carvajal met with Seiden one or two times before pleading guilty and one more time a day or two before sentencing. Olaya-Carvajal spoke with Seiden's secretary on the telephone four or five times before sentencing. Transcript at 10.

2. According to Seiden, the tactical reason that Olaya-Carvajal plead "straight-up" rather than with a plea agreement was to preserve the ability to appeal if the sentence imposed was greater than expected, an ability lost in a plea agreement because of the appeal waiver provision. Transcript at 28.

3. According to his usual practice, before the plea hearing Seiden discusses with the client the possibility of appealing, but Seiden has no independent recollection of having such a discussion with Olaya-Carvajal. Transcript at 30-31. According to Olaya-Carvajal, between the plea hearing and the sentencing hearing, Seiden never discussed appealing. Transcript at 11. Seiden's file contains no notation indicating that Olaya-Carvajal either requested counsel to appeal or requested counsel not to appeal. Seiden would have filed a notice of appeal if Olaya-Carvajal had requested one. Transcript at 25 and 27.

4. Before leaving the courtroom after imposition of sentence and while the court interpreter is still available, Seiden's usual practice is to give his client the forms necessary for appealing or for contacting his office to request an appeal. Transcript at 23. Seiden had

no further contact with Olaya-Carvajal after sentencing; Seiden neither visited Olaya-Carvajal at the jail nor sent to him a final letter. Transcript at 24 and 27.

5. Because the sentencing judge advised him of his right to appeal, Olaya-Carvajal testified that immediately after sentencing he told Seiden that he wanted to appeal and Seiden said that he would visit Olaya-Carvajal at the jail. Transcript at 11 and 17. Due to his ignorance of the process, Olaya-Carvajal believed that Seiden would file a notice of appeal because the sentencing judge advised him of his right to appeal.[1] Transcript at 21.

---

[1] Additionally, while on cross-examination during the evidentiary hearing, Olaya-Carvajal testified to an exchange with the sentencing judge that is not supported by the sentencing transcript.

> Q. And your testimony is that you specifically told the Judge that you wished to appeal, correct?
>
> A. Yes, sir.
>
> Q. And what did the Judge tell you in response?
>
> A. Uh, that if I was able to afford an attorney. And I answered that no, that I did not have the means to pay an attorney. So he told me that he was going to appoint, uh, an attorney from the Government so that he could assist me in my appeal.
>
> Q. And what else did you tell the Judge after he told you he would appoint a lawyer to assist you in your appeal?
>
> A. Well, the Judge told me that for the time being the attorney that had been with me on my case would be appointed, and that he would continue to assist me in my appeal.
>
> Q. And when you spoke to the Judge, what you told the judge was translated by the interpreter?
>
> A. Yes.
>
> Q. And what the Judge told you was in — translated by the interpreter so that you could understand, correct?
>
> A. Yes, sir.

Transcript at 19-20. While this aspect of Olaya-Carvajal's testimony is unsupported by the record of the sentencing hearing, it does not affect his overall credibility but further demonstrates the language barrier this particular defendant encountered.

Having observed Olaya-Carvajal testify, the undersigned is of the opinion that Olaya-Carvajal has difficulty understanding the judicial process, which could be the result of the language barrier, intelligence, or lack of preparation by counsel.

6.   Olaya-Carvajal inquired about the status of his appeal by sending to the clerks office a letter dated July 14, 2005.  Exhibit B attached to motion to vacate (Doc. 1).

7.   Seiden did not, after the imposition of sentence, consult with Olaya-Carvajal about whether to file a notice of appeal even though Olaya-Carvajal had fully preserved his right to appeal by pleading without a plea agreement.  The preponderance of credible evidence shows that Olaya-Carvajal's understanding was that Seiden would file a notice of appeal.

## Analysis

The analysis of Olaya-Carvajal's claim is governed by Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000).  Olaya-Carvajal claims that his defense counsel was ineffective for not filing a notice of appeal.  Olaya-Carvajal must meet the test established in Strickland v. Washington, 466 U.S. 668 (1984):

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998) (citations omitted).  Strickland's two-prong test governs claims that counsel was ineffective for not filing an appeal. Flores-Ortega, 528 U.S. at 476-77.  Flores-Ortega recognizes three categories of claims: (1) counsel fails to file an appeal even though the defendant unquestionably expresses his

desire to appeal,[2] (2) the defendant faults counsel for not appealing even though the defendant stated that he did not want an appeal,[3] and (3) the defendant's desire to appeal is not clearly expressed.[4]

### A. Was Olaya-Carvajal's Desire For An Appeal Clearly Expressed?

Immediately after sentencing and before leaving the courtroom, Olaya-Carvajal claims that he specifically directed defense counsel to file an appeal and defense counsel advised that he would visit Olaya-Carvajal at the jail. Defense counsel has no independent recollection of the conversation and would have filed an appeal if Olaya-Carvajal had specifically requested counsel to appeal. Because the witnesses dispute whether Olaya-Carvajal requested an appeal, Olaya-Carvajal did not unquestionably request an appeal. Consequently, this case falls into Flores-Ortega's third category in which Olaya-Carvajal's desire to appeal was not clearly expressed. Flores-Ortega provides guidance on how to proceed:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the

---

[2] Flores-Ortega, 528 U.S. at 477 ("[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.").

[3] Id. at 477. ("At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

[4] Id. at 477 ("Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?").

- 5 -

> term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Id. at 478. As determined above Seiden did not consult with Olaya-Carvajal about appealing. As a consequence, the question remaining is whether consultation was constitutionally required.

### B. Did Seiden Have A Constitutional Duty To Consult Olaya-Carvajal About Appealing?

Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." Id. at 479. See also Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not."). Flores-Ortega identifies two situations where counsel is constitutionally required to consult the client about appealing.

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

528 U.S. at 480.

A "highly relevant factor" for consideration—in determining whether a rational defendant in Olaya-Carvajal's situation would want to appeal—is whether the defendant pleaded guilty and waived his appellate rights.

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id. at 480. The only reason for not entering into a plea agreement was to preserve Olaya-Carvajal's unlimited right to appeal. Based on Seiden's testimony, Olaya-Carvajal did not demonstrate an interest in appealing. That conclusion is not because Seiden has a specific recollection of his conversation with Olaya-Carvajal, but is reached only by a negative implication based on Seiden's notes failing to specifically indicate that Olaya-Carvajal either requested an appeal or requested that Seiden not appeal. To the contrary, Olaya-Carvajal testified that he requested Seiden to appeal and Seiden responded that he would visit Olaya-Carvajal at the jail before being transferred.

The court does not have to reject one witness's testimony to accept the other witness's testimony. Based on the testimony at the evidentiary hearing, Olaya-Carvajal believed that counsel would appeal. Revealing is the following exchange on cross-examination.

> Q. Is it fair to state, sir, that because the Court told you you had a right to appeal, that you assumed that an appeal was going to be filed on your behalf?
>
> A. Yes, in my ignorance I thought that that was the way it was going to be, yes.

Transcript at 21. Instead of eviscerating Olaya-Carvajal's contention that he specifically requested Seiden to appeal, this exchange shows that Olaya-Carvajal clearly lacked an understanding about the appellate process. In other words, Olaya-Carvajal profoundly misunderstood how to initiate an appeal, likely caused by Seiden's failure to adequately consult with Olaya-Carvajal before sentencing so that Olaya-Carvajal would understand the appellate process. It is undisputed that there was no consultation after sentencing.

This case shows why the general rule is that counsel must consult with his client regarding whether to appeal.[5] "We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Flores-Ortega, 528 U.S. at 481. This case also shows why simply giving a client some forms for the client to initiate an appeal is not adequate consultation.[6] "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such

---

[5] Cases finding that no consultation was required involve plea agreements that contain a waiver of the right to appeal. See, e.g., Otero v. United States, 499 F.3d 1267 (11th Cir. 2007); Devine v. United States, 520 F.3d 1286 (11th Cir. 2008).

[6] Seiden now obtains an affirmative statement from his client whether an appeal is desired and memorializes the statement in his file. Transcript at 32.

- 8 -

an appeal." Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007). See Flores-Ortega, 528 U.S. at 489 (Souter, J., concurring in part and dissenting in part) ("If the crime is minor, the issues simple, and the defendant sophisticated, a 5-minute conversation with his lawyer may well suffice; if the charge is serious, the potential claims subtle, and a defendant uneducated, hours of counseling may be in order."). Olaya-Carvajal's admitted "ignorance" about the appellate process is due to an inadequate consultation before sentencing and the absence of any consultation after sentencing.

## Conclusion

Consistent with Flores-Ortega and Thompson, Olaya-Carvajal is entitled to a delayed appeal because Seiden failed to adequately consult with Olaya-Carvajal either before or after sentencing about whether to appeal. Accordingly, this court recommends granting Ground Two of Olaya-Carvajal's Section 2255 motion and affording Olaya-Carvajal a delayed direct appeal.

Dated: March 19, 2009

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendation contained in this report within ten days from the date of service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by the district judge. See 28 U.S.C. § 636(b)(1); Rule 72, Fed. R. Civ. P.; and Local Rule 6.02.